COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia

**PUBLISHED**

GEORGE NORRIS, JR.

v.        Record No. 1054-18-2

ETEC MECHANICAL CORPORATION AND
 COMMONWEALTH CONTRACTORS GROUP SELF-INSURANCE

OPINION BY
JUDGE ROBERT J. HUMPHREYS
DECEMBER 26, 2018

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

William C. Carr, Jr. (Geoff McDonald & Associates, P.C., on brief),
for appellant.

Esther King (Emily Whitaker; McCandlish Holton, P.C., on brief),
for appellees.

Appellant George Norris, Jr. ("Norris"), fell asleep behind the wheel of a company

vehicle while driving home at the end of his work day, which resulted in an accident in which he

was injured.  He now appeals the June 25, 2018 decision of the Workers' Compensation

Commission (the "Commission") denying his claim for benefits, arguing that the Commission

erred in holding that he did not sustain an injury arising out of the course of his employment.

I.  BACKGROUND

On March 31, 2017, Norris was driving from a job site in Powhatan County to his

residence when he "dozed off," which resulted in an accident.  Norris sustained severe injuries

that required hospitalization, surgeries, and an extensive stay at an in-patient rehabilitation

facility.  Norris subsequently filed a claim for benefits alleging injuries to his "right hip, leg, and

knee and his left shoulder, hip, leg, femur, knee and ankle."  Norris also clarified that he sought

medical benefits and temporary total disability at the subsequent hearing.

Disputing Norris's claim, ETEC Mechanical Corporation and its insurer, Commonwealth Contractors Group Self-Insurance (collectively "employer"), argued that Norris's injuries did not arise out of his employment.

On September 11, 2017, a hearing was held before a deputy commissioner.[1] The record reflects that Norris was driving on his street, approximately 200 yards from his home, when he fell asleep behind the wheel. Norris then ran off the road and crashed into a tree. Norris explained that he knew that he dozed off because it had happened to him in the past. According to Norris, "I get tired in the evenings, and sometimes moreso [sic] than others, . . . I've dozed off before. It's just fighting sleep. And I guess this time I didn't wake up." Norris denied consuming drugs or alcohol before the accident, other than taking his blood pressure medication that morning, and denied any history of blacking out.

Norris also described the work that he performed for employer before the accident. Norris testified that he is a master electrician and typically works on commercial HVAC equipment. On the day of the accident, Norris was at a job location fixing leaks in air conditioning refrigeration lines. The job required Norris to go up and down a ladder throughout his eight-hour workday and move nitrogen bottles on two separate occasions. Notably, Norris characterized the work week leading up to the accident as "a normal week" that "wasn't that bad, actually."

In an opinion dated October 16, 2017, the deputy commissioner denied Norris's claim for benefits. The deputy commissioner's opinion emphasized his finding that Norris did not sufficiently prove a causal connection between the conditions of his work, falling asleep behind

---

[1] Norris testified at the hearing before the deputy commissioner and via deposition, which occurred on August 10, 2017. The Commission explicitly considered both sources of evidence in its June 25, 2018 opinion.

the wheel, and the resulting accident and injury. Norris subsequently requested a review of the deputy commissioner's opinion.

In an opinion dated June 25, 2018, the Commission agreed with the deputy commissioner's finding that Norris failed to prove the requisite causal connection between his work conditions and falling asleep behind the wheel. The Commission's opinion initially recognized that Norris was in the course of his employment when his accident occurred. As a result of that finding, the Commission focused upon the pivotal question in this case: whether Norris's accident and his resulting injuries, which occurred because Norris fell asleep behind the wheel, arose out of his employment.

The Commission ultimately denied Norris's claim due to an absence of "affirmative evidence establishing a causal connection between [Norris's] employment and his untimely slumber[.]"[2] Importantly, the Commission emphasized that Norris failed to provide convincing evidence to explain why he was tired on the evening in question. "He agreed that it had been a normal work week and that he had not been on call for the employer." The Commission noted that while Norris's work was physical in nature, "he did not refer to those tasks as more strenuous or difficult that [sic] normal, nor did he relate his fatigue or inability to stay awake to the activities he performed" for employer. Medical records prepared after the accident and Norris's pre-hearing deposition testimony also failed to identify why Norris fell asleep behind the wheel. Finally, the Commission *sua sponte* considered whether the street risk doctrine demanded a different result, even though Norris did not previously argue the application of the doctrine to support his claim for benefits. The Commission held that the doctrine did not control

---

[2] A dissenting commissioner argued that Norris's employment "placed him in a position increasing the dangerous effects of a motor vehicle accident." The dissenting commissioner concluded that, "[t]he accident resulted from a hazard incident to [Norris's] presence on the streets. It arose out of the employment under the street risk doctrine and the actual risk test."

its decision and that driving a company vehicle did not supply Norris with a risk of falling asleep behind the wheel.

## II. ANALYSIS

### A. Standard of Review

"Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review *de novo* on appeal." Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411 (2013) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). "Accordingly, although we are bound by the commission's underlying factual findings if those findings are supported by credible evidence, . . . we review *de novo* the commission's ultimate determination as to whether the injury arose out of the claimant's employment." Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477 (2006) (citation omitted).

### B. Norris's Injury

The Workers' Compensation Act applies when the claimant "satisfies both the 'arising out of' and the 'in the course of' prongs of the statutory requirements of compensability." Bernard v. Carlson Cos.—TGIF, 60 Va. App. 400, 404-05 (2012) (quoting Butler v. S. States Coop., Inc., 270 Va. 459, 465 (2005)). "The concepts 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded." Id. at 405 (quoting Clifton v. Clifton Cable Contracting, LLC, 54 Va. App. 532, 539 (2009)).

It is undisputed that Norris was injured "in the course of" his employment. Therefore, we need only address whether Norris's injuries constitute a compensable injury "arising out of" his employment.

In determining whether an injury arises out of employment, "Virginia employs the actual risk test." Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 828 (2000) (quoting Vint v.

Alleghany Reg'l Hosp., 32 Va. App. 60, 63 (2000)). Under the actual risk test, the general rule is that a claimant's injury arises out of the employment "if the manner in which the employer requires the work to be performed is causally related to the resulting injury." Id. (quoting Vint, 32 Va. App. at 63). Importantly, the actual risk test "necessarily excludes an injury caused by 'a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.'" Bernard, 60 Va. App. at 405-06 (quoting Hill City Trucking v. Christian, 238 Va. 735, 740 (1989)) (emphasis omitted). The causal connection required by the actual risk test "is established when 'the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment.'" City of Waynesboro v. Griffin, 51 Va. App. 308, 314 (2008) (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335 (1938)).

Here, Norris argues that his accident arose out of his employment "because he was where he was expected to be—driving himself . . . home, while reasonably fulfilling the duties of employment." Norris further argues that even though falling asleep while driving is a known hazard encountered by the general public, he "does not need to prove that his employment circumstances were the sole proximate cause of his accident only that the circumstances were a proximate cause."

Based upon the record before this Court, we find that Norris failed to establish the requisite causal connection between his employment and the resulting injury. Norris correctly states the proposition that "[t]he mere fact that the hazard is one to which the general public likewise is exposed is not . . . conclusive against the existence of such causal relationship." R & T Investments Ltd. v. Johns, 228 Va. 249, 253 (1984) (noting that the probability of harm may be augmented by the peculiar risks of the job) (citing Honaker v. Hartley, 140 Va. 1, 11

(1924)).  That proposition, however, does not negate the fact that it remains Norris's statutory burden to "prove by a preponderance of the evidence that the accident 'arose out of and in the course of his employment[.]'"  Conner v. Bragg, 203 Va. 204, 207-08 (1962) (quoting Norfolk & Washington Steamboat Co. v. Holladay, 174 Va. 152, 157 (1939)).  Further, for an injury to qualify as arising out of the course of the employment, this Court has consistently held that "[a] '*critical link*' must exist between the conditions of the workplace and the injury[.]"  Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 359 (2004) (quoting Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380-81 (1991)) (emphasis in original).

Mindful of Norris's statutory burden, the Commission found that Norris failed to establish the requisite "critical link" or causal connection between the conditions of his work and falling asleep behind the wheel.  We agree.  While Norris's accident occurred because Norris fell asleep behind the wheel, the record reflects that Norris denied knowing what caused him to fall asleep.  Norris testified that he dozed off because he was tired, but never related his drowsiness to his employment.  Norris also characterized the work week leading up to the accident as "a normal week" that "wasn't that bad, actually."  Based upon this testimony and other evidence in the record, Norris failed to sustain his statutory burden of providing the "critical link" between his employment and the resulting injuries.  It follows that neither the Commission nor this Court can indulge in an inference that Norris's injuries arose out of his employment.

### C.  Norris's Statutory Burden

Jumbled within Norris's appellate argument is his adoption of the Commission dissent that "[a]n employee should not be required to prove a work-related factor caused him to fall asleep while driving in the course of his employment."  Citing the Commission dissent nearly word-for-word, Norris argues that "[w]ork placed him in a position operating a motor vehicle" and that "failing to prove the cause of falling asleep should not determine whether the accident

- 6 -

arose out of the employment." We disagree with the Commission dissent and Norris's argument in that regard.

Neither Norris nor the Commission dissent cite any case law from the Commonwealth to support what would amount to a fundamental change in Norris's statutory burden. This is because none exists, and Norris's reliance on the Commission dissent is misplaced and ignores an abundance of binding precedent on the issue of a claimant's burden under the *Commonwealth's* Workers' Compensation Act. Notably, Norris cites a New Hampshire Supreme Court case where a claimant was not required to prove why he fell asleep behind the wheel to establish a compensable injury by accident. See Appeal of Kelly, 114 A.3d 316, 322 (N.H. 2015). The Kelly case, however, is not binding upon this Court and is of little persuasive value because it applies theories of liability outside of the statutory framework of *our* Workers' Compensation Act.

Working within the statutory framework provided by the Act and jurisprudence from this Court and our Supreme Court, it is clearly a claimant's statutory burden "to prove by a preponderance of the evidence that the accident 'arose out of and in the course of his employment.'" Conner, 203 Va. at 207-08 (citation omitted). As previously explained, however, Norris cannot show that the accident arose out of his employment because he failed to prove any nexus whatsoever between his employment and falling asleep behind the wheel beyond the fact that he was driving a company vehicle. For that reason, Norris's argument in this regard fails.

### D.  Street Risk Doctrine

Norris also relies upon the reasoning set forth in the Commission dissent to argue that his accident arose out of the employment pursuant to the "street risk doctrine." Although Norris

never relied upon the street risk doctrine in any argument before the Commission, the

Commission *sua sponte* considered whether the doctrine controlled its June 25, 2018 opinion.[3]

Case law discussing the street risk doctrine emphasizes that the "common to the

neighborhood" rule, found within the actual risk doctrine, does not apply when an employee is

driving on public roads in the course of his employment. See, e.g., Bernard, 60 Va. App. at 408

("Under the 'street-risk rule,' . . . the generally applicable principles—excluding coverage for

unpeculiar [sic] risks, common to everyone—do not necessarily apply to vehicle accidents

caused by ordinary street risks." (internal citation omitted)). "This principle recognizes

compensable injuries that occur in vehicular collisions while an employee is on his or her

master's business." Id. (quoting Lawrence J. Pascal, Workers' Compensation Practice in

Virginia 2.401, at 58 (8th ed. 2011).

It follows that, under the street risk doctrine, an injury is compensable if the claimant

"establish[es] by a preponderance of the evidence (1) that his or her duties to the employer

require his or her presence upon the public streets, and (2) that his or her injury arose from an

actual risk of that presence upon the streets[.]" Hill v. Southern Tank Transp., Inc., 44 Va. App.

725, 730 (2005) (quoting Sentara Leigh Hosp. v. Nichols, 13 Va. App. 630, 634-35 (1992)).

---

[3] In its brief to this Court, employer argues that Norris "has waived reliance on the street risk doctrine pursuant to Rule 5A:18." Employer asserts that "[w]hile the Commission analyzed the applicability of the street risk rule in its Opinion, the doctrine was only raised *sua sponte . . . ,* which is insufficient for purposes of satisfying Rule 5A:18." To support this argument, employer relies upon an unpublished case from this Court, Big Lots Stores, Inc. v. Browning, No. 0095-10-2 (Va. Ct. App. Nov. 9, 2010). However, in that case, this Court refused to consider an argument raised by the employer because when the case was before the Commission, the employer did not raise that argument, "*and the Commission did not address the argument in its opinion.*" Id. at *5 (emphasis added).

Further, in this case, employer ignores the text of Rule 5A:18, which merely requires that a party make a contemporaneous objection to a ruling of the Commission to preserve the issue for appeal. Rather than making a ruling, however, the Commission addressed the street risk doctrine in its June 25, 2018 opinion, which did not offer Norris any opportunity to make an objection.

The Commission found that the street risk doctrine did not apply to the facts of this case. After outlining the parameters of the street risk doctrine, the Commission majority noted the clear cause of Norris's accident and injuries—falling asleep behind the wheel. The Commission then stated that "[w]hile falling asleep behind the wheel affords a virtual guarantee of an accident, the operative question is whether driving a vehicle confronted the claimant with a risk of falling asleep. We hold that it does not." The Commission, however, declined to offer a more detailed analysis of why the street risk doctrine did not apply.

Despite the Commission's deficient analysis regarding the street risk doctrine, to the extent that Norris relies upon the rule to argue that his injuries arose out of his employment, we affirm the Commission's conclusion that the street risk doctrine is inapplicable here. Norris relies upon the street risk doctrine to argue that "[h]is employment placed him in a position increasing the dangerous effects of a motor vehicle accident. The accident resulted from a hazard incident to his presence on the streets. It arose out of the employment under the street risk doctrine and the actual risk test." Turning to the Commission's discussion of the street risk doctrine, however, it is clear that the Commission implicitly found that Norris did not prove the second prong of the test, i.e., that the accident arose from an actual risk of his presence on the street. See Hill, 44 Va. App. at 730. The evidence in the record does not explain how any hazards of the street caused Norris's injuries, thereby eliminating the possibility of causes totally unrelated to the street risks of employment. Therefore, we do not find Norris's arguments concerning the street risk doctrine controlling or persuasive.[4]

---

[4] We do not overlook the Commission dissent and Norris's citation to Mktg. Profiles, Inc. v. Hill, 17 Va. App. 431 (1993) (*en banc*). In that case, we affirmed the Commission's finding that an employee's vehicular accident arose out of and in the course of the employment because the employee offered *sufficient* evidence establishing that his injuries were caused by an automobile accident while he was driving on the road. Apparently causing some confusion, we stated in Marketing Profiles that under the street-risk rule—referred to as the street risk doctrine

## III. CONCLUSION

For the reasons discussed above, we hold that Norris failed to meet his statutory burden of proof, which required him to establish a "critical link" between his injuries and an actual risk of his employment. Accordingly, we affirm the denial of benefits.

Affirmed.

---

in this case and in others—"if the employment occasions the employee's use of the street, the risks of the street are the risks of the employment." Id. at 435 (citation omitted).

However, Marketing Profiles must be read in the context of an explained accident and the fact that the employee there established a *prima facie* case to the Commission's satisfaction, i.e., how the hazards of the street caused his injuries. Here, the Commission found that Norris's simply falling asleep at the wheel, without more, did not establish a *prima facie* case. Given that important distinction, Norris failed to meet his burden of proof and this Court's consistent interpretation of the actual risk test, which emphasizes that "[t]he mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." K & G Abatement Co. v. Keil, 38 Va. App. 744, 756 (2002) (quoting Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484 (1989)). Norris failed to establish any linkage between "dozing off" resulting in an accident and his work requirements other than his operation of a company vehicle.

- 10 -